# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 12, 2012

## STATE OF TENNESSEE v. KEVIN WOMACK

**Direct Appeal from the Circuit Court for Madison County**
**No. 10-774     Donald H. Allen, Judge**

_____

**No. W2011-01827-CCA-R3-CD  - Filed July 26, 2012**

_____

A Madison County jury convicted the Defendant, Kevin Womack, of possession of cocaine with intent to sell, possession of cocaine with intent to deliver, possession of a firearm with intent to employ in the commission of a dangerous felony, possession of drug paraphernalia, theft of property over $500, and tampering with evidence. The trial court sentenced the Defendant to an effective eighteen-year sentence in the Tennessee Department of Correction. On appeal, the Defendant asserts that the evidence is insufficient to support his convictions. After a thorough review of the record and applicable law, we affirm the trial court's judgments, with the exception of the theft of property conviction, which we modify from a Class E felony theft to a Class A misdemeanor theft.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Modified in Part**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Gregory D. Gookin (on appeal), Jackson, Tennessee, and G. Michael Casey (at trial), Jackson, Tennessee, for the appellant, Kevin Womack.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; James G. Woodall, District Attorney General; Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This cases arises from a traffic stop during which police officers found a large

quantity of cocaine, a measuring scale, and a stolen weapon inside a vehicle being driven by the Defendant. A Madison County grand jury indicted the Defendant for possession of cocaine with intent to sell, possession of cocaine with intent to deliver, possession of a firearm with intent to employ in the commission of a dangerous felony, possession of drug paraphernalia, theft of property over $500, and tampering with evidence. At the trial on these charges, the parties presented the following evidence: Tikal Greer, a Jackson Police Department investigator, testified that his work in the police department focused on drug interdiction. Investigator Greer recalled that, at around 9:15 p.m. on May 4, 2010, he saw a maroon Chevy Silverado, without its headlights illuminated, backing out of Preston Alley. He continued to observe the truck as it drove without the vehicle lights illuminated. Investigator Greer initiated a traffic stop and collected the license and proof of insurance from the driver, who was the Defendant, in order to write a citation for failing to use headlights.

Investigator Greer testified that the area in which he stopped the Defendant was a "high crime area, high drug, high prostitution area." As a matter of routine, he called Investigator Moss, a K-9 handler, to the scene to "run his dog." Investigator Moss and his canine arrived approximately ten to fifteen minutes after the initial traffic stop. Investigator Greer said that, because there were other police officers present during the stop to watch the Defendant, he returned to his unmarked car to check on the Defendant's license and insurance. After he finished writing the citation, Investigator Greer walked back toward the vehicle. One of the police officers who had been watching the Defendant, Investigator Smith, indicated to Investigator Greer that he observed the Defendant "grinding something under his elbow" as Investigator Greer was walking toward the truck. Investigator Greer asked the Defendant to get out of the truck, and he noticed a "white substance, powdery substance, on the center console." Investigator Greer field tested the white powdery substance, which tested positive for cocaine, and the Defendant was placed under arrest for possession of cocaine and tampering with evidence. Police recovered $305 in US currency on the Defendant's person and a cellular phone. Another cellular phone was found on the center console in the truck.

Investigator Greer testified that, after the Defendant was placed under arrest, Investigator Moss conducted a K-9 search around the perimeter of the truck. After the K-9 search was complete, police officers searched the vehicle. During the search of the vehicle, police officers noticed a "toggle switch" located above the rear view mirror. The Defendant told Investigator Greer that the switch was used for televisions that had been mounted inside the vehicle at one time. Police officers continued to trace the wires that were connected to the toggle switch through the front portion of the truck. As they did so, "a spark hit and [police officers] heard a servo motor open and a digital scale actually fell out of where the [passenger side] air bag would be." Police officers lifted the latch where the passenger side

2

air bag should have been and found a "homemade hidden compartment" that contained a Glock .45 caliber pistol with a 30-round clip and 8.5 grams of crack cocaine. Investigator Greer recalled that the top of the digital scales had residue that field tested positive for cocaine.

Investigator Greer testified that, once he had returned to his office, he ran a search for the vehicle tags and found that the registered owner of the truck was the Defendant's mother, Ms. Anderson. Investigator Greer said that the Defendant was alone in the truck the night of the traffic stop.

Investigator Greer said that the truck was taken to a police facility for further investigation of the wiring and secret compartment. Investigator Greer explained that, at the scene, police officers accidentally "trip[ped] the wires," and he wanted to learn the actual sequence of events that would open the hidden compartment. The hidden compartment was slightly larger than the truck's original glove compartment. The passenger side air bag had been removed and replaced with the compartment. There were two screws placed on the side of the compartment door to prevent the compartment from too much movement once the "servo motors" were engaged. Once the "servo motors" were engaged, the hidden compartment could not be opened unless by force. Investigator Greer explained that the wiring was all linked to the toggle switch, which allowed the hidden compartment door to be accessed from the passenger or driver side of the truck.

Investigator Greer testified that he ran a search for the Glock , which he learned had been reported stolen. The firearm had been stolen from Parkway Gun & Pawn during a burglary in 2008. Investigator Greer said that the Glock 30 is a subcompact .45 caliber handgun, which is smaller and more easily concealed. When police officers collected the pistol, it was fully load with a 30-round magazine.

On cross-examination, Investigator Greer described the console area where the Defendant crushed the cocaine as a black "hard plastic" surface. Investigator Greer agreed that the black plastic surface would not absorb the white cocaine powder. Investigator Greer said that the search of the truck at the scene lasted approximately twenty minutes before gunshots were fired "up the street" and, for safety reasons, they concluded the search.

Andrew Smith, a Madison County Sheriff's Department deputy, testified that he was assigned as a narcotics impact investigator. Deputy Smith recalled that, on May 4, 2010, he observed a maroon Chevy pickup truck driving at night without its headlights illuminated. Deputy Smith said that he contacted Investigator Greer, who was in another unmarked patrol car, to notify him of the truck, and Investigator Greer indicated he too had seen the truck driving without its headlights activated. Another officer initiated the traffic stop and, when

3

Deputy Smith arrived, he assumed a cover position for officer safety. He explained that this meant that he positioned himself by the passenger side window where he could see inside the truck.

Deputy Smith testified that the Defendant was the driver and the only person in the truck. Deputy Smith recalled that, as he stood by the truck window, he observed a "white powdery substance" on the console arm rest located between the front driver's seat and front passenger seat. Deputy Smith said it appeared to be cocaine, but, because he knew that a K-9 unit was on the way, he did not immediately say anything. The patch of white powdery substance was approximately an inch long and a quarter of an inch wide. As Deputy Smith observed the Defendant, the Defendant moved his arm, placing it on top of the white powdery substance, and began making "slow grinding circles." Deputy Smith said that it appeared as if the Defendant "was trying to spread it around or grind it away to where it couldn't be seen or it couldn't be tested." Deputy Smith said that he opened the car door and grabbed the Defendant's right arm and lifted the arm up to prevent the Defendant from destroying potential evidence. Another officer approached the driver's side door and helped the Defendant out of the truck.

Deputy Smith testified that, after the Defendant was taken out of the truck, Investigator Greer field tested the white powdery substance found on the console armrest and a K-9 unit walked the perimeter of the truck. Shortly thereafter, Deputy Smith left the scene to respond to a nearby shooting.

On cross-examination, Deputy Smith testified that, by the time he had returned to where another officer had initiated a traffic stop of the Defendant, the truck's headlights were activated.

Brandon Moss, a Jackson Police Department officer, testified that he was a dog handler for a K-9 unit, and one of his main responsibilities was to assist with traffic stops. Officer Moss recalled reporting to a traffic stop on May 4, 2010, with a drug detector dog. Because the Defendant had already been arrested at the time Officer Moss arrived, Officer Moss conducted a K-9 search of both the exterior and interior of the truck. Officer Moss testified that the K-9 officer alerted in the passenger side dashboard area of the truck, which indicated the scent of drugs. After the K-9 officer alerted, police officers began to search the interior of the truck.

Officer Moss testified that, as he searched the truck, he noticed a toggle switch that had been installed in the "headliner." Officer Moss asked another officer to ask the Defendant about the purpose of the switch, and Officer Moss was told the Defendant said it was a switch for a television that used to be in the truck. Officer Moss confirmed that there

4

was not a television in the truck at the time of the search. Officer Moss located the wires attached to the switch and traced them through the truck to the floorboard. Officer Moss noted that the wires ran through the body and the conduit into the door of the truck which he said was "unusual." Officer Moss said that if the toggle switch had been for a television it would not have been "logical" for it to run into the door of the truck. The wires connected into the same motor that powered the electric windows. As officers continued to investigate the wires, they triggered the intended response, and the "secret compartment" opened. The compartment was located where the passenger side air bag should have been installed. A plate had been installed to make it look like the air bag was still installed, but there was a pistol and a bag of drugs inside the compartment.

Jennifer Sullivan, a Tennessee Bureau of Investigation special agent forensic scientist, testified as an expert witness in the field of narcotics analysis and drug identification. Agent Sullivan testified that she performed tests on substances collected from the truck the Defendant drove on May 4, 2010. The test results indicated that the drugs collected from the compartment were a cocaine base or crack cocaine and weighed 7.2 grams. The test results for the cocaine residue collected indicated cocaine base.

Based upon this evidence, the jury convicted the Defendant of possession of cocaine with intent to sell, possession of cocaine with intent to deliver, possession of a firearm with intent to employ in the commission of a dangerous felony, possession of drug paraphernalia, theft of property over $500, and tampering with evidence. The possession of cocaine with intent to sell and the possession of cocaine with intent to deliver convictions were merged. The trial court ordered the Defendant to serve an effective sentence of eighteen years in the Tennessee Department of Correction. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant argues that the evidence presented at trial is insufficient to support his convictions. The State responds that the proof supports the jury's finding of the Defendant's guilt beyond a reasonable doubt for each of his convictions.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State*

*v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### A. Possession of Cocaine, Firearm, and Drug Paraphernalia

The Defendant argues that the State provided no proof at trial that the Defendant "had

any knowledge of the presence of crack cocaine [, the pistol, or the digital scales] much less that he had any intent to exercise control over [these items]."  The State responds that there was sufficient evidence to prove that the Defendant was in constructive possession of the evidence found in the truck.  We agree with the State.

The Defendant was convicted of possession of cocaine with intent to sell and the State was required to prove beyond a reasonable doubt that the Defendant knowingly "possess[ed] a controlled substance with intent to manufacture, deliver or sell the controlled substance."  T.C.A. § 39-17-417(a)(4) (2010).  A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a class B felony if the amount of the cocaine possessed is .5 grams or more.  T.C.A. § 39-17-417(c)(1) (2010).  Thus, in order to convict the Defendant, the State was required to prove beyond a reasonable doubt: (1) a knowing mental state; (2) possession of cocaine; (3) an intent to sell or deliver that cocaine; and (4) that the weight of the cocaine was .5 grams or more.  T.C.A. § 39-17-417(a) (2010).

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist."  T.C.A. § 39-11-302(b) (2010).  A conviction for possession of cocaine may be based upon either actual or constructive possession.  *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).  Further, the trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them.  T.C.A. § 39-17-419 (2010); *see also State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant), *perm. app. denied* (Tenn. Oct. 21, 2002); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession), *perm. app. denied* (Tenn. July 10, 1995).

In the present case,[1] to sustain the conviction for possession of drug paraphernalia, the State had to prove that the Defendant possessed with intent to use drug paraphernalia knowing it would be used to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain,

---

[1]  The record reflects that the grand jury indicted and the jury convicted the Defendant of felony possession of drug paraphernalia.  The trial court, however, without explanation, sentenced the Defendant for a misdemeanor possession of drug paraphernalia..  For purposes of our analysis, we use the elements required for felony possession of drug paraphernalia.

7

conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]" T.C.A. § 39-17-425 (2010).

A person commits the crime of possession of a firearm in the commission of or escape from an offense when the person "possesses any deadly weapon with intent to employ it in the commission of or escape from an offense." T.C.A. § 39-17-1307(c)(1) (2010). Therefore, in order for the State to convict the Defendant of this crime, it had to prove beyond a reasonable doubt that the Defendant possessed a deadly weapon, and the Defendant possessed the deadly weapon with the intent to employ it in the commission of or escape from an offense. Additionally, this Court has stated that "[p]ossession may be actual or constructive." *State v. Steven D. Pittman*, No. M1999-00320-CCA-R3-CD, 2000 WL 374755, at *3 (Tenn. Crim. App., at Nashville, Apr. 7, 2000), *perm. app. dismissed* (Tenn. July 31, 2000). Constructive possession is essentially the ability to reduce an object to actual possession. *Id*.

The evidence, viewed in the light most favorable to the State, proves that the Defendant was driving a truck, registered to his mother, without the headlights illuminated at night in an area known for the sale of illegal drugs. After police initiated a traffic stop, Officer Smith observed cocaine on the console arm rest next to the Defendant. Several minutes later, Officer Smith watched the Defendant move his arm and place it on top of the cocaine substance. The Defendant then began grinding the substance with his elbow until stopped by the police. Thereafter, a K-9 officer alerted to the passenger side of the truck indicating the scent of drugs that were later found in a compartment on the passenger side of the vehicle. A mechanical system had been installed in the truck creating a compartment, where the passenger air bag should have been, to hide the drugs from detection. A toggle switch provided access to the compartment from either the driver's seat or the front passenger's seat. In addition to the crack cocaine inside the compartment, there was a digital scale with drug residue and a gun. On the Defendant's person was $305 in US currency.

As stated above, a jury may infer the intention to sell or deliver drugs from the amount of the drug possessed by the accused along with other relevant facts surrounding the arrest. T.C.A. § 39-17-419 (2010). The Defendant was the sole person in a truck significantly altered to provide for a hidden compartment accessible from both the driver's seat and the passenger seat. Crack cocaine, digital scales with cocaine base residue and a loaded gun were all stored in the hidden compartment within the Defendant's control. The Defendant also attempted to conceal the drugs by crushing the crack cocaine under his elbow.

Further, the Defendant's constructive possession of the drugs is sufficient to sustain the conviction, which requires proof that the Defendant had the power and intention at a given time to exercise dominion and control over the drugs. *See Shaw*, 37 S.W.3d at 903.

8

As proven in this case, the Defendant's position in the driver's seat of the vehicle placed him in a position where he could exercise dominion and control over the drugs found in the concealed compartment. The jury heard and weighed the testimony of witnesses and convicted the Defendant of possession of cocaine with intent to sell, possession of a firearm in the commission of an offense and possession of drug paraphernalia. Based on the evidence presented, we will not disturb the jury's finding on appeal. The evidence is sufficient to support the Defendant's convictions, and he is not entitled to relief on this issue.

### B. Theft of Property over $500

The Defendant asserts that the State failed to establish each element of this offense because the State did not produce testimony from the victim that the pistol was taken without effective consent, and the pistol's value was not established. The State responds that, because the Defendant failed to raise an objection at trial, the jury rightfully considered Investigator Greer's testimony that the pistol was stolen and properly evaluated the value of the stolen property.

A person commits theft of property if that person: 1) "knowingly obtains or exercises control over the property," 2) "with intent to deprive the owner" of the property, and 3) "without the owner's effective consent." T.C.A. § 39-14-103 (2010). In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. Theft of property valued at more than $500 but less than $1,000 is a Class E felony. T.C.A. § 39-14-105(2) (2010). Theft may also be inferred by the mere possession of recently stolen goods. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987).

At trial, Investigator Greer testified that when he ran a records search for the pistol found in the hidden compartment of the truck, the search revealed that the pistol was stolen. He further testified that the pistol was one of the guns that had been stolen from Parkway Gun & Pawn in a 2008 burglary of the pawn shop. The State correctly notes that the Defendant raised no hearsay objection to this testimony regarding the pistol's stolen status. "When a party does not object to the admissibility of evidence, though the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible.'" *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000). Thus, the jury was entitled to consider this evidence and obviously found Investigator's Greer testimony to be credible. As noted above, questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Accordingly, we conclude that the evidence presented at trial, when viewed in the light most favorable to the State, was

sufficient to support the jury's verdict that the Defendant possessed a stolen pistol. The Defendant is not entitled to relief as to this issue.

The Defendant asserts, and the State concedes, that no evidence regarding the value of the gun was presented. The value of the property taken is an element of the offense of theft. T.C.A. § 39-14-105 (2010); *State v. Mike Wayne Tate*, No. 03C01-9204-CR-127, 1993 WL 55631, at * 2 (Tenn. Crim. App., at Knoxville, March 4, 1993), *perm. app. denied* (Tenn. June 1, 1993). Thus, because the State presented no proof regarding the value of the subject property, the Defendant's conviction for theft of property over $500 may not stand. This Court may not presume the range of value of the gun. The proof was sufficient to prove beyond a reasonable doubt that the gun had some value. However, there is no proof in the record that the value was over $500. As a result, the Defendant's conviction for theft of property must be modified to theft of property valued at $500 or less, a Class A misdemeanor, and the sentence modified to eleven months and twenty-nine days of confinement. *See State v. Darryl Keith Robinson*, No. W2008-02069-CCA-R3-CD, 2010 WL 376627 (Tenn. Crim. App., at Jackson, Feb. 3, 2010), *perm. app. denied* (Tenn. June 16, 2010) (reducing a jury verdict of theft of property over $10,000 but less than $60,000 to a misdemeanor theft conviction).

### C. Tampering with Evidence

To convict the Defendant of tampering with evidence, the State needed to establish, beyond a reasonable doubt, that the Defendant, knowing that an investigation or official proceeding was pending or in progress, altered, destroyed, or concealed any record, document, or thing with the intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. T.C.A. § 39-16-503(a)(1) (2010).

The Defendant asserts that because there was no proof to corroborate the law enforcement officers testimony that the Defendant used his elbow to grind cocaine into the console arm rest, the evidence is insufficient. We disagree. The evidence, viewed in the light most favorable to the State, proved that next to the Defendant on the console armrest was a small amount of cocaine. While Investigator Greer was checking the Defendant's license, registration, and record, Officer Smith observed the Defendant place his elbow on top of the cocaine and begin grinding his elbow into the substance.

The officer's testimony regarding these events is sufficient evidence to support a jury finding the Defendant guilty of tampering with evidence. It is the jury who is charged with making credibility determinations, not this Court. *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000). It is not the function of this court to reweigh the credibility of witnesses on appeal. *Id*. at 278-79. We will not disturb their decision. The Defendant is not entitled to relief as

10

to this issue.

The Defendant also asserts that, because a narcotics investigation was not in process, he can not be guilty of this offense. The statute requires that "an investigation or official proceeding is pending or in process." T.C.A. § 39-16-503(a)(1) (2010). Investigator Greer, in his official capacity, initiated a traffic stop involving the Defendant. As Investigator Greer was in the process of further investigating the Defendant's license and registration, the Defendant attempted to conceal an illegal substance that would be visible to the officers. We conclude that this is sufficient evidence for a jury to find beyond a reasonable doubt that the Defendant was guilty of tampering with evidence. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record before this Court, we hold that the evidence is sufficient to sustain the Defendant's convictions for possession of cocaine with intent to sell, possession of a firearm with intent to employ in the commission of a dangerous felony, possession of drug paraphernalia, theft of property, and tampering with evidence. However, because the State failed to present adequate evidence regarding the value of the stolen firearm, the Defendant's conviction for theft of property over $500 is modified to theft of property valued at $500 or less, and the sentence is modified to eleven months and twenty-nine days of confinement. The trial court is instructed to modify the judgment pertaining to the theft of property conviction to reflect that the value of the stolen property is less than $500, that the conviction is for a Class A misdemeanor, and that the sentence is eleven months and twenty-nine days of confinement, to be served consecutively to Counts 1 and 3 of Madison County case 10-774 and consecutive to Madison County case 09-551.

_____
ROBERT W. WEDEMEYER, JUDGE